UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KENNETH P. NELSON, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, COMMISSIONER, )<br>SOCIAL SECURITY ADMINISTRATION, )<br>)<br>Defendant ) | No. 1:15-cv-00450-JAW |

## REPORT AND RECOMMENDED DECISION

Plaintiff Kenneth P. Nelson seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's denial of his application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Defendant concluded that although Plaintiff has severe impairments, he retains the functional capacity to perform substantial gainful activity.

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

## The Administrative Findings

Defendant's final decision is the July 16, 2014, decision of the Administrative Law Judge (ALJ). (ECF No. 10-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disk disease of the cervical spine, affective disorder, and anxiety disorder. (*Id.* ¶¶ 3 – 4.) The ALJ concluded that Plaintiff had the residual functional capacity to perform light work

---

[1] Because the Appeals Council found no reason to review that decision (Notice of Appeals Council Action, ECF No. 10-2, PageID # 26), the Acting Commissioner's final decision is the ALJ's decision.

involving simple instructions and decisions, without public interaction, while seated for as many as six hours and standing or walking for as many as six hours in an eight-hour workday, subject to certain postural limitations.  (*Id.* ¶ 5.)

Relying on testimony from a vocational expert, the ALJ determined that while Plaintiff did not have the residual functional capacity to engage in his past relevant work as a truck driver and truck mechanic, Plaintiff's residual functional capacity was sufficient to permit an individual of Plaintiff's age and vocational background to engage in other substantial gainful activity.  (*Id.* ¶ 10.)  Specifically, the ALJ found that with his residual functional capacity, Plaintiff could perform a subset of light-exertion work, including the representative occupation of marker.  (*Id.*)  The ALJ thus concluded that Plaintiff was "not disabled" for the period from September 6, 2011, through the date of the decision.  (*Id.* ¶ 11.)

## Standard of Review

The Court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome.  *Manso–Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981).  "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**Chronological Medical Opinions of Record**

The record includes the following medical opinions that address Plaintiff's work capacity.

1. A case analysis by Rosario Palmeri, M.D., reveals that on May 21, 2007, Plaintiff was experiencing neck and back pain following a motor vehicle accident in November 2006, but that Plaintiff "should be functional" within one year (i.e., his symptoms would not meet the one-year durational requirement of the Social Security Act). (Exhibit 2F, ECF No. 10-7.)[2]

2. A psychiatric review technique form, completed on July 6, 2010, by Mary Ford Clark, Psy.D., contains a finding of a non-severe affective disorder. (Exhibit 4F, *Id.*)

3. A physical residual functional capacity form, completed on July 7, 2010, by M. A. Gopal, M.D., includes a finding of a capacity for light work. (Exhibit 5F, *Id.*)

4. Reference to a physical residual functional capacity assessment performed by Benjamin Weinberg, M.D., on June 22, 2012. Dr. Weinberg assessed a capacity for light work with sit/stand/walk limitations consistent with the ALJ's residual functional capacity findings, and postural limitations less restrictive than those found by the ALJ. (Exhibit 2A, ECF No. 10-3.)

5. Reference to a physical residual functional capacity assessment performed by Donald Trumbull, M.D., on October 12, 2012. Dr. Trumbull assessed a capacity for light work with sit/stand/walk limitations consistent with the ALJ's residual functional capacity findings, and postural limitations less restrictive than those found by the ALJ. Dr. Trumbull also assessed a restriction of "no constant overhead work" based on

---

[2] Plaintiff's cervical degenerative disk disease predated the motor vehicle accident. Plaintiff underwent spinal surgery in January 2005. (Ex. 17F.)

      reconsideration of medical records.  (Exhibit 5A, *Id.*)

6. Treating source statement (physical) completed on June 4, 2014, by Theresa Hainer, NP, which form includes a finding that Plaintiff is unable to sustain regular attendance and complete an ordinary work day and work week, has limitations on his use of his upper extremities,[3] has a capacity for less than sedentary work, and has marked limitation in all functional categories.  (Exhibit 29F, ECF No. 10-12.)

7. Treating source mental impairment form, completed by Robert Magaw, PMH–NP on June 7, 2014, which form contains a finding of marked limitations in social functioning and concentration, persistence, and pace, an inability to maintain attention for two-hour segments, a likely rate of absences from work in excess of four days per month, and significantly diminished mental capacity for unskilled, simple work.  (Exhibit 30F, *Id.*)

8. Dr. Ira Hymoff testified that Plaintiff's B criteria limitations are moderate for activities of daily living and social functioning and "at least moderate and that may at time be marked" for concentration, persistence, and pace.  (Hr'g Tr. at 33, PageID # 129.)  On further examination, Dr. Hymoff opined that Plaintiff would be able to meet the demands of "simple repetitive nonpublic work."  (*Id.* at 34.)

## Discussion

Plaintiff alleges an onset of disability in September 2011, which coincides with the end of his last period of gainful employment.  In his itemized statement of errors, Plaintiff asserts that the ALJ committed eight errors in his decision.  Plaintiff also raised one additional argument at oral argument.

---

[3] Plaintiff's upper extremity symptoms were assessed by means of a nerve conduction study and electromyography on January 11, 2011.  The consulting physician interpreted the results of the study as "mildly abnormal but nondiagnostic."  (Ex. 8F, ECF No. 10-7, PageID # 535.)

1. *Plaintiff's response to injection therapy*

Plaintiff argues that the ALJ mischaracterized the record regarding the benefit Plaintiff derived from injection therapy. Specifically, while the ALJ reported that Plaintiff obtained significant relief from chronic pain through epidural steroid injections, the ALJ did not note that the benefit of medial branch block injections was of only very limited duration (less than 24-hours). (Statement of Errors at 2, ECF No. 15-1.) A review of the ALJ's discussion, however, reveals that the ALJ understood that Plaintiff's relief was temporary, and the ALJ did not misconstrue the record evidence.

The ALJ cited the records to illustrate the chronic pain Plaintiff experiences as a consequence of degenerative disk disease of the cervical spine, and to note Plaintiff's response to various pain management techniques. The ALJ did not suggest the techniques resolved Plaintiff's chronic pain symptoms. The ALJ's discussion was in fact part of a larger credibility assessment that also included consideration of certain clinical findings, Plaintiff's report regarding his activities of daily life, Plaintiff's explanation for his unsuccessful job search, and experts' views that Plaintiff's symptoms do not prevent light work activity. The ALJ was entitled to consider Plaintiff's report as to the effectiveness of the pain management techniques in the credibility assessment, and the ALJ's credibility assessment is supported by sufficient evidence on the record. *Rodriguez v. Celebrezze,* 349 F.2d 494, 496 (1st Cir. 1965) ("Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]."); *Shaw v. Sec'y of HHS,* No. 93–2173, 1994 WL 251000, * 4 (1st Cir.1994) (unpublished) ("Where the facts permit diverse inferences, we will affirm the [Commissioner] even if we might have reached a different result.").

### 2.     *Dr. Ruperal's treatment plan*

Citing exhibit 7F, Plaintiff argues that the ALJ disregarded an "entire record" consisting of Dr. Ruperal's treatment plan prior to 2008.  (Statement of Errors at 2.)  Plaintiff asserts that the complete record would have revealed an extended history of mental health symptoms dating back to 2003.  (*Id.*)  In a separate filing, Plaintiff enclosed a copy of exhibit 7F to demonstrate that the Whitman Counseling Center records do not precede 2008.  (ECF No. 28.)

Plaintiff's contention that the five additional years of counseling records at Whitman Counseling Center establish that the ALJ's decision is not supported by substantial evidence on the record is unconvincing.  Insofar as Plaintiff has alleged a date of onset of September 6, 2011, and the ALJ reviewed multiple years of recent counseling records from the Whitman Counseling Center, the ALJ plainly considered Plaintiff's mental health issues.  Furthermore, the records Plaintiff contends the ALJ did not consider were records generated when Plaintiff was engaged in substantial gainful activity.  *See Kenney v. Colvin*, No. 13-cv-00296, 2014 WL 3548986, at *5 n.2 (D. Me. July 17, 2014) (holding that treatment record did not undermine ALJ's findings where it was generated more than a year before alleged onset date and during a period when plaintiff reported doing heavy work); *Henderson v. Astrue*, No. 08-cv-00167, 2009 WL 214569, at *4 (D. Me. Jan. 27, 2009) (holding that mental health records from well before the alleged onset date did not refute ALJ's findings); 42 U.S.C. § 423(d)(5)(B) (the Commissioner is required to consider all of the evidence in the record, but need only develop a medical history for the 12 months prior to the alleged onset date).

### 3.     *Chronic pain syndrome*

Plaintiff's records from Signature Healthcare (Ex. 6F) include an apparent diagnosis of chronic pain syndrome (CPS).  Plaintiff argues the ALJ erred because he did not discuss the

6

diagnosis. (Statement of Errors at 3.) Plaintiff further contends that the CPS diagnosis reinforces NP Hainer's treating source statement (Ex. 29F). The ALJ's consideration of Plaintiff's chronic pain is a primary focus of the ALJ's decision, even though he did not specifically reference chronic pain syndrome. In his consideration of Plaintiff's chronic pain symptoms, the ALJ referenced the records, which were identified as Exhibit 6F. The ALJ, therefore, considered the records. Importantly, even if the ALJ had not discussed the records, Plaintiff has failed to demonstrate how the records, which predate onset by more than a year, would establish an inability to perform light-duty work.

Contrary to Plaintiff's argument, NP Hainer's decision to continue the methadone plan prescribed by providers at Signature Healthcare does not establish the ALJ erred when assessing Plaintiff's work capacity. After reviewing NP Hainer's treating source statement, the ALJ rejected the conclusions therein because, in the ALJ's view, the report overstated Plaintiff's functional limitations and was not supported by the underlying treatment records. (R. 45 – 46.) Plaintiff's argument for alternative inferences and conclusions does not establish that the ALJ erred. *Rodriguez,* 349 F.2d at 496. *See also Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987) (the ALJ may discount medical opinions that "rel[y] excessively on claimant's subjective complaints, rather than on objective medical findings"); *Bailey v. Colvin*, No. 13-cv-00057, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) (stating that inconsistency between physician's treatment notes and opinions, and the fact that the opinions "appear on their face to be based primarily on the plaintiff's subjective allegations of pain," are "well-recognized bases in Social Security law for rejection of a treating physician's conclusions").

4. *Dr. Hymoff's testimony*

Dr. Hymoff testified that Plaintiff's medical records included certain "rule out" psychiatric

diagnoses. (Hr'g Tr. at 30 – 31, PageID # 126 – 127.) Plaintiff argues that these rule out diagnoses required "resolution" and that Dr. Hymoff's testimony otherwise "comes into question as biased." (Statement of Errors at 3 – 4.) The record does not support Plaintiff's argument. Dr. Hymoff's testimony reflects that he was familiar with Plaintiff's mental health records and Plaintiff's alleged symptoms. As an expert witness called to assess Plaintiff's mental residual functional capacity, Dr. Hymoff was not required to "rule out" any particular diagnosis. Instead, he was to assess Plaintiff's mental residual functional capacity based on the available information and his training and experience. The fact Dr. Hymoff did not "rule out" certain diagnoses does not invalidate his opinions.

### 5. *Supplemental Acadia Hospital records*

Plaintiff asserts that he provided the Appeals Council with supplemental records from Acadia Hospital and argues that had the Appeals Council properly weighed the evidence, the Council would have awarded benefits immediately. (Statement of Errors at 4; Statement of Errors Ex. D, ECF No. 15-7.) The Appeals Council acknowledged receipt of the updated records, but concluded that they were not material to the determination of Plaintiff's residual functional capacity on or before the date of the ALJ hearing because the records were "about a later time." (Notice of Appeals Council Action at 2, R. 2, ECF No. 10-2, PageID # 27.)

The Appeals Council's decision regarding the evidence is in accord with the Social Security regulations, which provide in pertinent part:

> If you submit additional evidence, the Appeals Council will consider the additional evidence only where it relates to the period on or before the date of the hearing decision, and only if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, and ….

20 C.F.R. § 405.401(c). The Acadia Hospital records Plaintiff provided to the Appeals Council

describe an October 27, 2014, admission pursuant to a psychological assessment referral (ECF No. 15-7, PageID # 1056) and a January 12, 2015, admission on a referral concerning Plaintiff's interest in receiving electroconvulsive therapy, which record concludes with a recommendation that the risks outweigh the likely benefits (PageID # 1060). The records, therefore, reflect treatment Plaintiff received after the date of the hearing before the ALJ.

The records not only document treatment administered after the hearing, but confirm the condition for which Plaintiff was treated did not exist in the same form before the hearing. Rather, a review of the records reveals that Plaintiff experienced an exacerbation of his mental health symptoms after the ALJ's decision was issued. Given that the records relate to treatment for a condition and symptoms that developed after the ALJ's decision, the records do not support a determination that the ALJ's decision "might reasonably have been different" had he considered them. *Evangelista v. Sec'y of HHS*, 826 F.2d 136, 140 (1st Cir. 1987) (quoting *Falu v. Secretary of HHS,* 703 F.2d 24, 27 (1st Cir. 1983)). *See also Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984) ("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." (citing *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982))). The Appeals Council thus was not "egregiously mistaken" that the new evidence "did not present a reasonable probability of changing the ALJ's decision." *Wilson v. Colvin*, No. 2:13-CV-00197-JDL, 2014 WL 4715406, at *1 (D. Me. Sept. 22, 2014) (citing *Mills v. Apfel,* 244 F.3d 1 (1st Cir. 2001)). [4]

---

[4] At oral argument, Plaintiff represented that he was admitted at Acadia Hospital in March 2016 for a serious mental health issue. The medical records were not part of the record, but the materiality of the records would be assessed in the same manner, i.e., as evidence of subsequent deterioration of the condition considered by the ALJ. As explained to Plaintiff during the hearing, even if more recent developments, such as the March admission, cannot be used to support Plaintiff's request for benefits in this case, Plaintiff can file another petition with the Social Security Administration based on conditions that developed or that might have worsened after the hearing before the ALJ.

### 6. *Failed work attempts*

Plaintiff contends the ALJ failed to consider and properly weigh the fact that he was unsuccessful in maintaining employment on two occasions in 2011, as a truck driver and as a truck mechanic. (Statement of Errors at 5, citing Ex. 7D, ECF No. 10-5 & Ex. 5E, ECF No. 10-6.) Not insignificantly, the work attempts occurred prior to Plaintiff's alleged onset date. Additionally, based on Plaintiff's testimony, the ALJ could reasonably conclude that Plaintiff's inability to maintain employment as a mechanic was due to concerns unrelated to a disability. Furthermore, Plaintiff's inability to work as a truck driver or mechanic is not inconsistent with the ALJ's finding that he retains the capacity for a subset of light-duty work that would not involve sitting or standing for more than six hours in an eight-hour workday. The work attempts thus do not warrant remand for a further hearing.

### 7. *Questions presented to the vocational expert*

Plaintiff argues that the ALJ "improperly pos[ed] questions to the vocational expert" regarding Plaintiff's medications. (Statement of Errors at 5.) The transcript of the vocational expert's testimony does not establish that the ALJ asked the vocational expert any improper questions about Plaintiff's medications. (Hr'g Tr. at 36 – 38, R. 107 – 109, ECF No. 10-2.) The record lacks sufficient evidence to support the suggestion that the ALJ sought and relied upon medical testimony from the vocational expert.

### 8. *FICA statement*

Plaintiff maintains that his FICA earning statement is compelling evidence of his inability to work because it reflects his struggle to obtain and sustain gainful employment. (Statement of Errors 5, citing Ex. 8D, ECF No. 10-5.) Plaintiff's difficulty sustaining gainful employment does not compel a finding that his difficulty is the result of a disability under Social Security Act. In

fact, there are many non-disability reasons individuals are unable to sustain employment. The mere fact that Plaintiff has had difficulty maintaining employment does not warrant remand of the matter.

9.   *Step 3*

At the oral argument, Plaintiff argued that based on a July 2010 Whitman Counseling record (Ex. 7F, p.3, R. 481, PageID # 512), the ALJ should have ruled in his favor at step 3 of the sequential evaluation process. Because Plaintiff did not include this argument in his itemized statement of errors, it was waived. *See*, *e.g.*, *Hughes v. Colvin*, No. 2:15-CV-00150-JHR, 2016 WL 225688, at *3 (D. Me. Jan. 19, 2016). Even if Plaintiff had not waived the argument, the record Plaintiff cites does not support a finding of a listing level mental health impairment.

When assessing mental impairments at step 3, one must consider (1) the extent of limitation in the following areas of mental functioning: activities of daily living; maintaining social functioning; concentration, persistence, and pace; and (2) whether the impairment has resulted in episodes of decompensation. Generally, to constitute a listing level impairment, the claimant must experience a marked limitation in two of the three areas identified above, or a marked limitation in one of the areas with repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(B), 12.06(B). The areas are the so-called "B criteria" of the Commissioner's mental impairment listings. Although Plaintiff maintains that Exhibit 7F reflects a listing level mental health impairment, the record does not contradict the ALJ's finding that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." (ALJ Decision at 6, R. 40, PageID # 65.)

Alternatively, a listing level impairment can be demonstrated with "C criteria" evidence of a more particularized loss of function, such as an "inability to function outside a highly supportive

living arrangement," 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(C), or "complete inability to function independently outside the area of one's home." *Id.* § 12.06(C). The record cited by Plaintiff does not contradict the ALJ's conclusion that the record as a whole "fails to establish the presence of the 'paragraph C' criteria." (*Id.*)[5]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm Defendant's final decision and enter judgment in favor of Defendant.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of July, 2016.

---

[5] As explained above (n.4), because the more recent records Plaintiff referenced at oral argument relate to treatment he received after the date of the hearing before the ALJ and after the ALJ's decision, the evidence is not part of the record on judicial review in this case.